UNITED STATES of America

v.

**SHERPIX, INC., Appellant.**

**UNITED STATES of America**

v.

**Louis K. SHER, Appellant.**

**Nos. 74–1382, 74–1383.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 13, 1974.

Decided May 15, 1975.

Edmund C. Grainger, Jr., and Ralph J. Schwarz, Jr., New York City, for appellants.

Steven R. Schaars, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief for appellee.

Before MOORE,* Senior Circuit Judge for the Second Circuit, and MacKINNON and ROBB, Circuit Judges.

Opinion for the court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

In a five-count indictment filed March 23, 1973, appellants, Sherpix, Inc., and its president Louis K. Sher, and seven codefendants,[1] were charged with violating federal and District of Columbia obscenity laws in connection with the distribution and exhibition of the film "Hot Circuit." The first trial commenced September 24, 1973, and ended in a mistrial due to a hung jury. At retrial in December 1973, the Government dismissed one count of the indictment which charged unlawful advertising of an obscene film in violation of D.C. Code § 22–2001. (Tr. 324, 333) The court also granted a defense motion for dismissal of a count charging interstate shipment of an obscene film by common carrier, 18 U.S.C. § 1462. (Tr. 503, 523) The remaining three counts submitted to the jury charged: (1) conspiracy during the period from December 1, 1971, to November 16, 1972, to violate federal and D. C. obscenity laws (18 U.S.C. § 371); (2) interstate shipment of an obscene film from New Jersey to the District of Columbia on October 2, 1972, for purposes of sale or distribution (18 U.S.C. § 1465); and (3) knowingly presenting that film in the District of Columbia from October 4 to November 2, 1972 (D.C. Code § 22–2001). Each appellant was found guilty of all counts. Sher was given a suspended sentence and

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Five of these co-defendants eventually pleaded guilty to various counts of the indictment.

Charges against the remaining two were dismissed by the Government.

three years probation, and Sherpix was fined a total of $6,000. These appeals followed. Because we find that the District Court used an improper test in instructing the jury on the question of the obscenity of the film, we reverse.

## I.

 Appellants were convicted for offenses committed between December 1, 1971, and November 16, 1972, under an indictment filed March 23, 1973. During this period, the *Roth-Memoirs*[2] definition of "obscenity" was the applicable standard to be used in evaluating material which was alleged to be obscene. Under that test, material was obscene if:

(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) *the material is utterly without redeeming social value.*

383 U.S. at 418, 86 S.Ct. at 977 (emphasis added). On June 21, 1973, between the filing of the instant indictment and appellants' trials, the Supreme Court decided Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). After *Miller*, material is obscene if:

(a) . . . "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) . . . the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) . . . *the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.*

413 U.S. at 24, 93 S.Ct. at 2615 (emphasis added).

The District Court determined that appellants' conduct was to be judged according to the *Miller* standards and instructed the jury accordingly. Appellants argue that this retroactive application of *Miller* to offenses committed pre-*Miller* denied them due process. Although the constitutional prohibition on *ex post facto* laws[3] does not apply directly to this situation,[4] the due process clause imposes a similar prohibition where the law is modified by judicial construction. See Douglas v. Buder, 412 U.S. 430, 432, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973); Bouie v. City of Columbia, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); Pierce v. United States, 314 U.S. 306, 311, 62 S.Ct. 237, 86 L.Ed. 226 (1941).

As to both the second and third counts, the jury was told that an essential element of the offense was:

That the film, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Tr. 706, 712. This same finding was of course necessary before appellants could be found guilty of conspiracy to violate the obscenity statutes under the first count. The court also instructed:

It is for you to determine whether the film in issue in this case is of such value to society. If you find that it lacks serious literary, artistic, political, or scientific value, and that the other elements have been met, you may find the film obscene.

Tr. 710. These excerpts clearly show the court was instructing the jury under *Miller* test (c).

 The Government argued that certain portions of the jury instructions were sufficient to also charge *Roth-Memoirs* test (c). For example, the court told the jury:

The fact, if it is a fact, that a film deals with sex does not mean that it cannot have value to society.

---

2. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

3. U.S.Const., Art. I, § 10.

4. *See* James v. United States, 366 U.S. 213, 247–48, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (separate opinion of Harlan, J.).

Such material can have social importance if it portrays sex in a manner that advocates ideas or that has serious literary, scientific, or artistic value.

Tr. 710. Regardless of the meaning this language may have conveyed to the jury, it clearly could not have the impact of a charge using the "utterly without redeeming social value" terminology of *Roth-Memoirs*. We therefore conclude that the instructions given did not adequately present to the jury the essential elements required by (c) of that test. Cf. United States v. Hill, 500 F.2d 733 (5th Cir. 1974).[5]

It is clear that *Miller* test (c) is an expansion of the area of activity which can potentially result in criminal liability. In fact, this test was expressly adopted to ease the Government's burden of proving obscenity. See 413 U.S. at 22, 93 S.Ct. 2607. It is a fundamental principle that a person must have notice of what activity is prohibited before he may be held criminally liable for his actions.

The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," . . . must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

Bouie v. City of Columbia, *supra*, 378 U.S. at 354, 84 S.Ct. at 1703 (citations omitted). At the times appellants distributed and exhibited the film, they could expect to escape conviction unless a jury concluded that the film was "utterly without redeeming social value." Nothing existed to give them notice that their activities were also criminal if the film merely "lacked serious literary, artistic, political, or scientific value." Since appellants were not afforded the opportunity to conform their behavior to the law as subsequently construed, due process bars the retroactive application of *Miller* test (c), and the instant convictions must be reversed.

The two circuits which have considered this issue have reached similar conclusions regarding the retroactivity of the *Miller* tests. See United States v. Wasserman, 504 F.2d 1012 (5th Cir. 1974); United States v. Jacobs, 513 F.2d 564 (9th Cir. 1974). In addition, the correctness of this result was implied in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), where the Court held that a review of a pre-*Miller* conviction must give the appellant the benefit of any more favorable elements of the *Miller* tests, but reviewed the remainder of the conviction under the *Roth-Memoirs* tests. A similar

---

**5.** In *Hill*, the trial court had instructed the jury as follows:

Freedom of expression is fundamental to our society and has contributed much to the development and well-being of our free society. In the exercise of the constitutional right to free expression which all of us enjoy, sex may be portrayed and the subject of sex may be discussed, freely and publicly, so long as the expression does not fall within the area of obscenity. However, the constitutional right to free expression does not extend to the expression of that which is obscene.

Furthermore, obscenity is excluded from constitutional protection because it is without social value. Of course, the mere fact that material deals with sex does not mean that it cannot have value to society. Indeed, such material can have social importance if

it portrays sex in a manner that advocates ideas or that has literary, scientific or artistic value. It is for you to determine whether the materials at issue in this case are of value to society.

500 F.2d at 737. On the basis of this language, the Fifth Circuit concluded:

We think the above passage of the Court's charge, read with the instructions as a whole, was sufficient to inform the jury that they should not convict the defendant if they found the materials to be of any social value.

*Id.* at 738. While the instruction given in the instant case bears some superficial similarity to that used in *Hill*, the repeated recitation of the *Miller* test (c) terminology diluted the *Roth-Memoirs* test so as to convey to the jury the impression that a conviction would be possible even if the film was of some slight (*i. e.*, non-"serious") value.

analysis must take place in the present case. On retrial, the jury must be instructed under *Miller* as to those elements of the offense for which *Miller* is beneficial to appellants' case. The remainder of the instructions must conform to the requirements of *Roth-Memoirs*. In essence, a conviction can be obtained only if the material can be found to be obscene under both tests.[6]

## II.

We next turn to a consideration of those issues which are not mooted by our determination that a retrial of appellants is necessary.

A. *Conspiracy by Sherpix*: The first count of the indictment charges:

Commencing on or about December 1, 1971, and continuing to on or about November 16, 1972, within the District of Columbia and elsewhere, Louis K. Sher, defendant, and Saul Shiffrin, a co-conspirator only, and the original defendants and co-conspirators, Paul Glickler, Richard P. Lerner and Harry Brandt Booking Co., Inc. unlawfully, willfully and knowingly *did conspire*, combine, confederate and agree together, with each other and others, and *through their use of* Acorn Films, Inc., *Sherpix, Inc.* and Trans-Lux Theatre Corporation, to commit offenses against the United States by transporting and causing to be transported in interstate commerce by common carrier and for the purpose of sale, distribution and presentment, an obscene, lewd, lascivious and filthy motion picture . . ..

App. 21a–22a (emphasis added). At trial, Sherpix, Inc. (the corporation) moved to dismiss this count as to it on the ground that the indictment did not assert that Sherpix had conspired with anyone and hence did not charge it with the commission of any crime. (Tr. 510–11). However, the trial court denied the motion, and Sherpix was convicted and sentenced under this count.

■■ Both at trial and on appeal, the Government argued that the conspiracy count could be sustained against Sherpix on the grounds that a corporation is criminally responsible for the acts of its officers and thus can be charged with their conspiracies.[7] Since the corporation's president, Sher, was included in the list of conspirators, the Government asserted that this was sufficient to hold the corporation liable. However, this argument is beside the point. The issue here is not whether Sherpix can be found guilty of conspiracy but whether the allegations of the indictment are sufficient to charge Sherpix with an offense.

It is fundamental that the indictment must inform an accused of the nature of the charges against him,[8] and it is a necessary corollary that the indictment must also give the accused notice that he is in fact being accused. The factual allegations in the instant indictment do not measure up to these standards. They fail to charge Sherpix, Inc., with the essential element of a conspiracy, i. e., the agreement with another person to commit a crime.[9] Merely listing the cor-

---

6. *See* United States v. Groner, 494 F.2d 499, 500–01 (5th Cir. 1974).

7. Citing United States v. Wise, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962); Boise Dodge, Inc. v. United States, 406 F.2d 771 (9th Cir. 1969). The Government's argument is correct, so far as it goes, but a necessary prerequisite to conviction of the corporation is that it be designated as a defendant and charged as a conspirator by appropriate factual allegations.

8. In all criminal prosecutions, the accused shall enjoy the right . . . to be in-

formed of the nature and cause of the accusation . . ..

U.S.Const., amend. VI.

9. *See, e. g.*, Ingram v. United States, 360 U.S. 672, 677–78, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); Pereira v. United States, 347 U.S. 1, 12, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Zuideveld, 316 F.2d 873 (7th Cir. 1963). "The gist of the offense of conspiracy . . . is agreement among the conspirators to commit an offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy." United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 207, 85 L.Ed. 128 (1940) and cases cited.

poration as an instrumentality used by an officer in the conspiracy is not sufficient to establish that the grand jury charged the corporation as a co-conspirator. Individuals or corporations used without their knowledge or consent by others in the commission of offenses may not possess the requisite criminal intent to be guilty of an offense.[10] That the grand jury did not intend to charge Sherpix, Inc. in Count I is self-evident from the failure to name Sherpix as a party defendant or to allege that Sherpix "did conspire, combine, cooperate and agree with" any other person to commit offenses against the United States.

The grand jury showed itself quite capable of clearly expressing its intent when it wished to include a corporate entity among the parties accused. In the second and third counts, both Sherpix and Sher are clearly designated as accused parties, e. g., the second count charges: "Sherpix, Inc., Louis K. Sher [and others] . . . did unlawfully and knowingly transport and cause to be transported in interstate commerce . . . an obscene . . . motion picture . . .." (App. 25a–26a). Furthermore, in the first (conspiracy) count itself, another corporate entity, Harry Brandt Booking Co., Inc., was designated as a co-conspirator. While the exact reasons the grand jury chose to frame the first count as it did, without designating Sherpix, Inc. as a defendant or as a party to the unlawful agreement, may never be known, the conclusion is inescapable that it did treat Sherpix in a class apart from those it charged as defendants and as co-conspirators in the offense. We therefore hold that the allegations of the first count are insufficient to charge Sherpix, Inc., with the crime of conspiracy. On a retrial appellant Sherpix, Inc. cannot be tried as a defendant in the conspiracy count as that count is presently charged. We do not express any opinion as to whether a new indictment may be in order.

B. *The Seizure of the Film*: On November 1, 1972, an FBI Special Agent viewed a showing of the film at the Trans-Lux Theater in Washington, D. C. In support of his subsequent application for a search warrant, the agent drafted a detailed affidavit describing the film, and a warrant was obtained from a United States Magistrate. It was executed the same day and four reels of film were seized. The Government then petitioned for an adversary hearing before the Magistrate on the question of obscenity. At that hearing, held on November 3, Sherpix was represented by counsel. After viewing the film and hearing argument, the Magistrate determined that the film was obscene under the existing standards of obscenity. Appellants contend on appeal that the seizure of the film violated their first and fourth amendment rights, that the post-seizure adversary hearing violated their fifth amendment right to due process, and that the Magistrate lacked jurisdiction to conduct the post-seizure hearing.

■ In Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 637, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), the Court specifically left open the question of whether a judge must view the film before issuing a warrant for its seizure. However, we have since had occasion to consider this issue and have concluded that a proper affidavit can convey enough information to a Magistrate to enable him to make a determination of the alleged obscenity of the film sufficient to issue a warrant for its seizure. See United States v. Pryba, 163 U.S.App.D.C. 389, 400–02, 502 F.2d 391, 402–04 (1974):

> [T]he affidavit must afford the magistrate an opportunity to "focus searchingly on the question of obscenity."

*Id.*, 502 F.2d at 403.

■ We find the affidavit prepared by the agent in this case was sufficient to meet this standard. At the time the warrant was requested, the question before the Magistrate was one of probable cause. The affidavit is a lengthy account of the film, describing each scene in detail and with explicit lan-

---

**10.** *See* United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940).

guage, but suggesting no conclusions to be drawn from the description.[11] This clearly was sufficient to enable the Magistrate to exercise an informed and independent judgment concerning the existence of probable cause to issue a warrant for seizure of the film. Even if we had some doubt as to the sufficiency of the affidavit, the Magistrate's determination of probable cause is entitled to "great deference,"[12] and we find that he had a substantial basis for his decision. We therefore hold that the seizure of the film pursuant to the warrant was valid notwithstanding that the Magistrate had not personally viewed the film.

 While it is not clear from appellants' brief, it is possible that by claiming violations of first amendment rights, they are also asserting they were entitled to an adversary hearing before the film was seized. In Heller v. New York, 413 U.S. 483, 492, 93 S.Ct. 2789, 2795, 37 L.Ed.2d 745 (1973), the Court indicated that no such right exists where first amendment interests are otherwise safeguarded:

> If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party the seizure is constitutionally permissible.

Furthermore, in United States v. Pryba, *supra,* we considered and rejected a similar argument:

> It is now clear, too, that where allegedly obscene matter is seized pursuant to a search warrant for evidentiary use in a criminal prosecution, there is no absolute right to a prior adversary hearing.

502 F.2d at 405. Since the present appellants were afforded an adversary hearing promptly after the seizure, they can have no grounds to complain that the hearing was not held sooner.[13]

 We also reject appellants' argument that the Magistrate lacked jurisdiction to conduct the adversary hearing. Under 28 U.S.C. § 636(a), "[e]ach United States Magistrate . . . shall have . . . (1) all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts . . . ." The film in this case was seized pursuant to a warrant issued under Rule 41, Fed.R. Crim.P.[14] Since the holding of a prompt

---

**11.** For example, the last segment of the film was described as follows:

> The scene then changes to the hustler on a street corner trying to sell watches, perfume, and a vibrating dildo to one of the original strippers. She becomes fascinated with the dildo and invites the hustler to her apartment. There they engage in fellatio, cunnilingus, and intercourse while eating food and smearing food over each other's bodies.

App. 34a.

**12.** Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Jones v. United States, 362 U.S. 257, 270–71, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

**13.** The film in this case was seized for the purpose of preserving it as evidence in a criminal prosecution. Only one copy of "Hot Circuit" was seized. Seizure of material in order to preserve it as evidence is not subject to the prior restraint doctrine under the first amendment. Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). This distinction is recognized in Southeastern Promo-

tions, Ltd. v. Conrad, —— U.S. ——, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975), *citing* Heller v. New York, *supra.*

**14.** Rule 41 provides:

> (a) *Authority to Issue Warrant.* A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property is located, upon request of a federal law enforcement officer or an attorney for the government.

> \* \* \* \* \* \*

> (c) *Issuance and Contents.* A warrant shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evi-

adversary hearing is constitutionally required in order to validate the seizure,[15] that hearing is a necessary part of the warrant proceeding. Thus if the instant procedure fits within Rule 41, the Magistrate had jurisdiction to conduct the hearing.

Rule 41(c) authorizes the Magistrate to require the appearance of the *affiant* (*i. e.,* the FBI agent) and to examine the affiant and his witnesses, and Rule 41(e) only provides for a suppression hearing on motion of the party whose property has been seized. Thus Rule 41 does not specifically deal with the situation presented by this case. However, it has been held that Rule 41 authorizes an adversary hearing prior to the issuance of a warrant:

> Although the amendment of Rule 41(c) refers only to witnesses produced by the affiant, it is clear from the Advisory Committee Note accompanying the proposed change that the purpose was to give the magistrate "an opportunity to make a careful decision as to whether there is probable cause" based upon legally obtained evidence rather than have "the issue raised only later on a motion to suppress the evidence." Thus, while the drafters may not have specifically contemplated the present situation, we believe that their intent can best be effectuated, without doing violence to the language of the rule, by construing it to authorize an adver-

sary hearing of the type conducted by [the] Magistrate . . . .

*Perial Amusement Corp. v. Morse,* 482 F.2d 515, 522 (2d Cir. 1973). See also *United States v. Jacobs,* 513 F.2d 564, 568 (9th Cir., 1974).

We adopt this construction of Rule 41 for purposes of the present case as well. If the Magistrate has jurisdiction to hold an adversary hearing prior to the issuance of the warrant, we see no justification for a different result where the hearing is properly deferred until after the film has been seized. In fact, at that point the argument is even sounder since the Magistrate is then exercising a form of *in rem* jurisdiction over property which has come into the possession of the court via the warrant. In any event, where the Constitution requires the prompt holding of an adversary hearing in order to protect substantial first amendment interests, it is incongruous to argue that the Magistrate lacked jurisdiction sufficient to afford these protections to appellants.

Finally, appellants argue that the order directing them to "show cause" at the adversary hearing confronted them with a choice of not appearing and abandoning their first amendment interests in exhibiting the film or appearing to contest suppression of the film and thereby abandoning their right against self-incrimination.[16] However, this situation is not unlike the appearance by an

---

dence in whole or in part. Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. . . .

 \* \* \* \* \* \*

 (e) *Motion for Return of Property.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall

be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

**15.** Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

**16.** Since the privilege against self-incrimination is personal, it could not be invoked on behalf of the corporation, Sherpix. *See* United States v. Kordel, 397 U.S. 1, 7 n.9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). However, we need not consider the issue since Sher could raise this defense as to the charges against him in his individual capacity.

accused at a hearing on his motion to suppress evidence. In that context, the Supreme Court stated in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968):

> In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

Id. at 394, 88 S.Ct. at 976. This reasoning applies perforce to the instant situation to preclude the introduction by the Government at trial as part of its case-in-chief of testimony given by a putative defendant opposing the seizure at an adversary hearing in an obscenity case. As so limited, the procedure followed in this case involved no restriction on appellants' right against self-incrimination.

■■■■ C. *Validity of the Obscenity Statutes*: We find appellants' arguments relating to the constitutionality of the statutes they are accused of violating to be without merit. Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), rejected the argument that 18 U.S.C. § 1461, as applied to a pre-*Miller* offense, was unconstitutionally vague. The same construction will certainly be given to the determination of obscenity in section 1465, under which appellants were convicted, in light of its similar language. *Hamling* indicated the approach a court should take in ascertaining the relevant "community standards" for determining obscenity, see 418 U.S. at 104–06, 94 S.Ct. 2887, and these considerations will of course shape the instructions to the jury in the event of a retrial. The Court's formulation of the use of "community standards" in *Hamling* also disposes of appellants' argument that the conspiracy count under 18 U.S.C. § 371 is void for vagueness because it alleged a conspiracy to distribute the film throughout the country rather than just locally.

■■■■ The appellate courts in this jurisdiction have apparently not yet construed D.C.Code § 22–2001 in light of *Miller* test (b). (But see *United States v. Plummer*, Crim. No. 54967–72, D.C.Sup.Ct., Block, J., May 9, 1974 (section 22–2001 held valid)). However, we note that this statute uses language similar to that used in the federal statutes which have already been held constitutional and was also enacted by Congress. Thus we believe that the local statute is to be given the same construction as the federal statutes and is therefore constitutional.

■■■■■■ D. *Sufficiency of the Evidence*: Appellants' arguments relating to the sufficiency of the Government's evidence at trial are equally devoid of merit. Their attack on the federal convictions is predicated on the fact that the trial court dismissed the charges of interstate shipment by common carrier, 18 U.S.C. § 1462, with the following statement:

> I think that count three [§ 1465] is a clearly-made count. I think we have questions about count two [§ 1462] and I don't see any reason to allow the jury to speculate on something that I am not convinced about.

Tr. 503. Appellants argue that since there was no evidence of shipment by other than common carrier, the evidence was also too speculative to support convictions under section 1465 or for conspiracy to violate that section. This argument completely ignores the fact that the sections require proof of different elements to make out an offense under each. The elements of an offense under section 1462 are (1) use of a common carrier, (2) to transport obscene material in interstate commerce, whereas section 1465 prohibits (1) interstate transportation of obscene material, (2) for purposes of sale or distribution. While we express no opinion as to the soundness of the court's decision to dismiss the section 1462 charge, the evidence did show that appellants caused the movement of the film from New Jersey to the District of Columbia and that they intended to distribute the film here. Thus the evidence

at least was sufficient to take the section 1465 count to the jury.

As to the count charging violations of D.C.Code § 22–2001, appellants argue that since their only role was distribution of the film and since they took no active part in the exhibition of the film, they have committed no offenses locally. However, as is customary in most jurisdictions, in the District of Columbia aiders and abettors are charged as principals. See D.C.Code § 22–105.[17] The court instructed the jury:

> It is enough if the evidence in the case establishes beyond a reasonable doubt that each defendant presented the film either directly, or pursuant to a conspiratorial agreement, or that they aided and abetted others in presenting such film. `

Tr. 712. Appellants' acts of supplying the film to the exhibitor in return for a share of the proceeds from the exhibition were certainly sufficient evidence to take the local charges to the jury under an aiding and abetting theory.

### III.

The remaining issues raised by appellants, relating to the scope of expert testimony, the taking and use of grand jury testimony, and instructions on corporate officer responsibility, have been mooted by our conclusion that appellants' convictions must be vacated. For the guidance of the District Court on retrial, we note that the Supreme Court indicated in Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973) that the Government was not required to introduce expert testimony on community standards, but

> [t]he defense should be free to introduce *appropriate* expert testimony 
> . . ..

*Id.* at 121, 93 S.Ct. at 2685 (emphasis added). Thus a summary exclusion of all testimony on community standards would be inappropriate. Of course, as the Court noted in *Hamling, supra,*

> the District Court has wide discretion in its determination to admit and exclude evidence, and this is particularly true in the case of expert testimony.

418 U.S. at 108, 94 S.Ct. at 2903.

Further, we note that the requested instruction on the responsibility of a corporate officer for the acts of his corporation conformed to the principles set out in United States v. North American Van Lines, Inc., 202 F.Supp. 639, 644 (D.D.C.1962):

> The accepted rule is that officers, directors and agents of a corporation may be held criminally liable for their acts although performed in their official capacity but where they have neither actively participated in nor directed nor authorized a violation of law by their corporation they are not liable. 19 C.J.S. Corporations § 931; Fletcher, Cyclopedia Corporations, Perm.Ed., Vol. 3, Sec. 1348.

We view this as an accurate statement of the applicable law. The same principles apply to the determination of whether a corporate officer is a member of a conspiracy as apply generally to the participation of other individuals in a conspiracy. See Devitt & Blackmar, Federal Jury Practice & Instructions, §§ 23.09, 85.08 (1970).

In accordance with the foregoing opinion, appellants' convictions are reversed and the trial court is directed to dismiss the first count of the indictment with respect to appellant Sherpix, Inc.

Judgment accordingly.

---

17. D.C.Code § 22–105 provides:

§ 22–105. *Persons advising, inciting, or conniving at criminal offense to be charged as principals.*

In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be. (Mar. 3, 1901, 31 Stat. 1337, ch. 854, § 908.) A similar provision applies to federal offenses. *See* 18 U.S.C. § 2.