**William C. LAKIN, Appellant,**

v.

**UNITED STATES, Appellee.**

**Richard D. PLUMMER, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 8703, 8704.

District of Columbia Court of Appeals.

Argued Jan. 16, 1975.

Decided Sept. 30, 1976.

992

ality of the statute. We also conclude that the findings of appellants' knowledge are supported by the evidence.

On the evening of September 23, 1972, a Metropolitan Police Morals Division officer entered an "adult" bookstore at 413 Ninth Street, N.W., to determine if the store were selling the magazine *Three in the Dark*. The police previously had made arrests in other adult bookstores for possession of that magazine. Shortly after entering the store, the officer observed two copies of it on display. Each was encased in a sealed cellophane wrapper. He bought one from the clerk, who was appellant Lakin. Appellant Plummer was not there at the time.

Four days later, another officer went to the store with an arrest warrant for appellant Lakin and a search warrant for the premises. The officer inquired as to who was the manager. Appellant Plummer, one of the men then present in the store, replied that he was. The officer advised Plummer of the search warrant. After arresting Lakin, the officer searched the establishment. He discovered empty cellophane casings, as well as a device used to place them around the various publications available for sale. He also found and seized four more copies of *Three in the Dark*. At that point he arrested Plummer.

Following the trial, at which both sides contested the social value and literary merit of the publication, the trial court deferred judgment until the Supreme Court decided *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and its companion cases.[3] Following the issu-

Gilbert H. Deitch, Atlanta, Ga., appearing pro hac vice, with whom Kenneth D. Wood, Gaithersburg, Md., was on the brief, for appellants.

Jeffrey T. Demerath, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Michael A. Pace, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, FICKLING and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant Lakin was charged by information with selling an obscene magazine entitled *Three in the Dark* in violation of D.C.Code 1973, § 22–2001(a)(1)(A). Appellant Plummer was charged with possession of copies of that magazine with intent to disseminate them in contravention of § 22–2001(a)(1)(E).[1] On May 23, 1973, they were tried jointly without a jury. The trial court found appellants guilty as charged.[2] Appellants level a constitutional challenge at the court's finding that the magazine was obscene, and claim additional error in the findings that each of them possessed the requisite knowledge of the character of the publication. We find no error in the determination that the material was obscene and uphold the constitution-

1. The statute states in pertinent part:
 (a)(1) It shall be unlawful in the District of Columbia for a person knowingly—
 (A) to sell, deliver, distribute, or provide . . . any obscene, indecent or filthy writing, picture, sound recording, or other article or representation;
 \* \* \* \* \*
 (E) to create, buy, procure, or possess any matter described in the preceding subparagraphs . . . with intent to disseminate such matter . . . .

2. Both appellants received sentences of imprisonment for one year, the executions of which were suspended, with two years' unsupervised probation. Additionally, appellant Lakin was fined $500, and appellant Plummer was fined $1,500.

3. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Kapan v. California,* 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); *United States v. 12 200-Ft. Reels of Film,* 413 U.S. 123,

ance of those decisions, the court heard additional argument concerning their effect on the cases before it. In an opinion and order dated May 9, 1974, the court found appellants guilty as charged, ruling that *Three in the Dark* is obscene under both the *Roth-Memoirs*[4] definition of obscenity, which was in effect at the time of the alleged offenses, and the newer *Miller* definition.

## I

Appellants' main contention is that they were denied their constitutional rights under the First and Fifth Amendments in the application of both (or either) *Roth-Memoirs* and *Miller* to § 22–2001(a). They argue first that conviction under the former was improper because that test was explicitly "abandoned as unworkable" in *Miller v. California,* 413 U.S. at 23, 93 S.Ct. 2607. Second, they claim that § 22–2001(a) is unconstitutionally vague on its face under the guidelines set forth in *Miller* because it does not specifically define the sexual conduct the depiction of which is proscribed. *Id.* at 24, 93 S.Ct. 2607. Moreover, appellants urge that it was improper for the trial court to attempt to remedy the purported vagueness by placing the *Miller* gloss on the statutory language.

Alternatively, they urge that even if such a judicial construction cured the vagueness, the application of the *Miller* test to their pre-*Miller* conduct deprived them of their due process right to notice and violated the prohibition against *ex post facto* laws.[5]

█ We note first that the procedure followed by the trial court, *i. e.,* suspending final judgment pending the Supreme Court's decision in *Miller* and then applying both obscenity tests, was both wise and proper. *See, e. g., United States v. Sherpix, Inc.,* 168 U.S.App.D.C. 121, 126–27, 512 F.2d 1361, 1366–67 (1975). *See also United States v. Womack,* 166 U.S.App.D. C. 35, 50, 509 F.2d 368, 383 (1974), *cert. denied,* 422 U.S. 1022, 95 S.Ct. 2644, 45 L. Ed.2d 681 (1975). Appellants appear to misconstrue the purpose of employing such a procedure, which assuredly is not intended to prejudice a defendant by permitting prosecution under the most expedient standard. To the contrary, the purpose is to give him the benefit of every advantageous constitutional principle. *Hamling v. United States,* 418 U.S. 87, 101–02, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Sherpix, Inc., supra,* at 126–27, 512 F.2d at 1366–67; *United States v. Womack, supra,* at 50, 509 F.2d at 383.

93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). The Court recently has indicated its adherence to *Miller. See Liles v. Oregon,* 425 U.S. 963, 96 S.Ct. 1749, 48 L.Ed.2d 209 (1976) (STEVENS, J., concurring in denial of certiorari); *McKinney v. Alabama,* 424 U.S. 669, 96 S.Ct. 1189, 1193, 47 L.Ed.2d 387 (1976).

The procedure followed by the trial court in postponing any findings until after the decisions were rendered in those cases was requested by appellants' counsel.

The trial judge, upon personally viewing the magazine at the close of the government's case in chief, did state his belief that the material was "nothing but hard core pornography [with] nothing . . . that remotely contained any kind of social value." Appellants do not argue, nor do we find, that such an exposition was improper. We have held that, where justified, a trial judge, upon his own examination of the material, may find that it is "obscenity per se" or "hard core por-

nography" as a matter of law, subject to approprate appellate review. *See Wilhoit v. United States,* D.C.App., 279 A.2d 505, 507 & n. 4, *cert. denied,* 404 U.S. 994, 92 S.Ct. 538, 30 L.Ed.2d 546 (1971); *Morris v. United States,* D.C.App., 259 A.2d 337, 340 (1969).

4. *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

Under the *Roth-Memoirs* test it must be established that "(a) the dominant theme of the material taken as a whole appeals to the prurient interests in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Memoirs v. Massachusetts, supra,* at 418, 86 S.Ct. at 977.

5. U.S.Const., art. I, § 9, cl. 3.

Appellants' contention that the application of the *Roth-Memoirs* standard was improper because the Supreme Court abandoned it in *Miller* is without merit. The Court in *Miller* reformulated and clarified a definition of obscenity which had proved difficult to apply. The Court indicated dissatisfaction with the *Roth-Memoirs* standard because it imposed a greater burden on the regulation of obscene materials than was required by the Constitution.[6] However, at no point did the *Miller* Court reject the *Roth-Memoirs* test as constitutionally infirm or cast doubt upon the validity of convictions based thereon. *See Hamling v. United States, supra,* 418 U.S. at 112, 94 S.Ct. 2887.

Appellants also contend that § 22-2001(a) is unconstitutionally vague on its face under the second *Miller* guideline, in that it does not specifically define the sexual conduct the depiction or description of which is proscribed. They urge further that it was improper for the trial court to cure any alleged vagueness by applying the *Miller* gloss to the statutory language. We disagree.

The Supreme Court made it clear that the *Miller* decision "was not intended to hold all state statutes inadequate, and [it] clearly recognized that existing statutes 'as construed heretofore or hereafter, may well be adequate.'" *Hamling v. United States,* supra, at 112–13, 94 S.Ct. at 2905. Following *Miller,* the Court read into several federal obscenity provisions the test that it had enunciated in that case.[7] *United States v. 12 200-Ft. Reels of Film,* 413 U.S. 123, 130 n.7, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *Hamling v. United States, supra,* 418 U.S. at 114, 94 S.Ct. 2887. The Court construed the generic terms used in those provisions—"obscene", "lewd", "lascivious", "filthy", "indecent", and "immoral"—to be limited to the sort of " 'patently offensive representations or descriptions of that specific "hard core" sexual conduct given as examples in *Miller*. . . .'" *Hamling v. United States, supra,* at 114, 94 S.Ct. at 2906 (quoting *United States v. 12 200-Ft. Reels of Film, supra,* 413 U.S. at 130 n.7, 93 S.Ct. 2665). Those examples are:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibitions of the genitals. [*Miller v. California, supra,* 413 U.S. at 25, 93 S.Ct. at 2615.]

The Supreme Court thereby negated the petitioners' assertions of vagueness.

6. In *Miller* the Supreme Court rejected as "unworkable" the *Roth-Memoirs* requirement that the material be shown to be "utterly without redeeming social value", since his requirement placed on the prosecution "a burden virtually impossible to discharge under our criminal standards of proof." 413 U.S. at 22, 93 S.Ct. at 2613. The Court also rejected the view that the Constitution requires that the proscription of obscenity be based on uniform nationwide standards of what is obscene, referring to such standards as "hypothetical and unascertainable". It stated: "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas or New York City." *Id.* at 31–32, 93 S.Ct. at 2619.

Appellants argue also that they were prejudiced by the fact that they were tried on the basis of national community standards, and never had the opportunity to present expert testimony hearing on local community standards as authorized by *Miller.* Appellants could have raised this point when the trial court heard oral argument on the effect of *Miller* prior to making its findings, but they did not do so. There is no indication that the trial judge would not have entertained guidance on this question if appellants had offered it. Moreover, appellants make no proffer here that the standard they propose differs in any significant way from the standard under which they were adjudged guilty.

7. 19 U.S.C. § 1305(a) (1970), (restricting the importation of obscene or immoral articles); 18 U.S.C. § 1461 (1970) (regulating the mailing of obscene materials); and 18 U.S.C. § 1462 (1970) (regulating the importation and transportation of obscene materials).

In *Retzer v. United States*, D.C.App., 363 A.2d 307 (1976), we recently followed the lead of the Supreme Court in reading the *Miller* guidelines into the statutory language of § 22–2001.(a). The appellant there urged, as do appellants here, that the statute was unconstitutionally vague under *Miller*. In rejecting this argument, we applied the *Miller* gloss to § 22–2001(a), echoing that material may be considered "obscene, indecent, or filthy" under the statute if:

> . . . (a) . . . "the average person, applying contemporary community standards" would find the work, taken as a whole, appeals to the prurient interest . . .; (b) . . . the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable [local] law; and (c) . . . the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. [*Miller v. California, supra*, 413 U.S. at 24, 93 S. Ct. at 2615. (Citations omitted.)]

Moreover, we now construe, as did the trial court, the second element of this guideline, *i.e.*, the specifically defined sexual conduct, to be limited to the examples of "hard core" conduct enumerated in *Miller* and cited above.[8] So construed, the statute meets the constitutional requirement of definiteness. *See Hamling v. United States, supra*, 418 U.S. at 114, 94 S.Ct. 2887.

Alternatively, appellants argue that even if the statutory vagueness was cured by judicial construction, it was unconstitutional to apply the *Miller* standards to them. It is a fundamental principle that a person must have notice of what conduct is proscribed before he may be held criminally liable therefor. Accordingly, appellants argue that since the offenses at issue predated the Court's decision in *Miller*, the retroactive application of the *Miller* guidelines to them deprived them of their due process right to notice, and violated the constitutional prohibition against *ex post facto* laws.

Their contentions are neither novel nor valid. In rejecting an identical argument regarding the ban on *ex post facto* laws, the federal court of appeals for this circuit pointed out recently that the prohibition of such laws has no applicability to a situation such as that presented here, where the law retroactively applied has been modified by judicial construction rather than by legislative enactment. *United States v. Sherpix, Inc., supra*, at 125, 512 F.2d at 1365.

Appellants' due process argument also is without merit. In a case involving the application of *Miller* standards to pre-*Miller* conduct, the Supreme Court indicated that the listing in *Miller* of specific types of material which might be obscene "did not purport to make criminal . . . conduct which had not previously been thought criminal." All *Miller* did, the Court stated, was to add a "clarifying gloss" to the statute as previously construed. *Hamling v. United States, supra*, at 116, 94 S.Ct. at 2907. The Court reasoned that the defendants' right to notice thus was not violated. We reach a similar conclusion in this case.

That appellants' conduct was "previously . . . thought criminal" in this jurisdiction is apparent from a review of the construction of § 22–2001(a) extant prior to *Miller*. In *Wilhoit v. United States*, D.C. App., 279 A.2d 505, *cert. denied*, 404 U.S. 994, 92 S.Ct. 538, 30 L.Ed.2d 546 (1971), we construed the concept of obscenity employed in § 22–2001(a) to include "photographs, some in color, depicting the male and female genitalia as they are involved in deviant sexual practices, and . . . text consisting of a series of narratives of debauchery running perhaps the entire gamut of perversion." *Id.* at 506 n.1. As

---

8. Congress, of course, may redefine specific "hard core" sexual conduct, assuming no contravention of constitutional limitations.

will be shown below, this description, excepting the term "female", is an apt, if not understated portrayal of *Three in the Dark*. In *Kaplan v. United States*, D.C. App., 277 A.2d 477 (1971), *vacated*, 413 U. S. 913, 93 S.Ct. 3030, 37, L.Ed.2d 1022, *aff'd on remand*, D.C.App., 311 A.2d 506 (1973), we construed the concept of obscenity, under both *Roth-Memoirs* and *Miller*, as encompassing a film of a naked woman engaged in conduct simulating and suggesting intercourse, masturbation, and fellatio. The activities depicted in *Three in the Dark* go well beyond merely simulating and suggesting such activities. *Morris v. United States*, D.C.App., 259 A.2d 337 (1969), upheld a conviction under § 22–2001 for a live performance by a naked woman involved in simulated intercourse and fellatio. In that decision, we announced a doctrine of "obscenity per se" or "hard core pornography", and held such activity to come within that limitation. *See also United States v. Gower*, 316 F. Supp. 1390 (D.D.C.1970), *aff'd without opinion*, Dec. 30, 1971 (D.C.Cir.) (unpublished judgment), *vacated*, 413 U.S. 914, 93 S.Ct. 3067, 37 L.Ed.2d 1029 (1973), *aff'd*, 164 U.S.App.D.C. 98, 503 F.2d 189 (1974). The judicial construction of § 22–2001 prior to *Miller* readily dispels any notion that appellants lacked notice that *Three in the Dark* was obscene.

 As a reviewing court is required to do in cases involving "constitutional facts", we independently have reviewed the material in question and made our own judgment as to whether it is obscene as a matter of law and therefore beyond the scope of First Amendment protection. *Jacobellis* v. *Ohio*, 378 U.S. 184, 190, 84 S.Ct. 1676, 12 L.Ed.2d 793, (1964); *Wilhoit v. United States, supra,* at 507. *See Miller v. California, supra,* 413 U.S. at 25, 93 S.Ct. 2607. We have no difficulty in concluding

that *Three in the Dark* is obscene. The cover, visible to all in the store, pictures three nude males, two having their genitals fondled by the third. The publication includes over 70 photographs depicting the three engaged in numerous homosexual acts, including anal intercourse, fellatio, masturbation, and oral-anal activity, all in a variety of positions. The activities are staged against a contrasting plain dark background. The accompanying text is nothing more than a salacious and rather crude sequential account of aberrant homosexual acts, unrelated to the adjacent pictures except for the happenstance that a certain picture may manifest one of the various perversions discussed in the manuscript on a particular page. The writing was aptly described by the trial judge as a "'stream of consciousness' vulgarity." 102 Wash.D.L.Rep. 1149, 1152 (June 6, 1974). We do not consider it necessary to specify the magazine's contents in more detail in conjunction with the *Roth-Memoirs* and *Miller* tests to see if there is any aspect of *Three in the Dark* which might make it eligible for ·constitutional protection. We have assessed the work according to those standards and conclude that the magazine is obscene.[9]

## II

Appellants' second argument challenges their convictions on the ground of alleged infirmities in the statutory and constitutional requirement of scienter. Their contentions are essentially three: (1) the statute is vague on its requirement of knowledge; (2) the government must prove actual knowledge of the obscene quality of the content by direct evidence; and (3) neither appellants nor anyone else ever could be possessed of the requisite knowledge because "contemporary" community standards are, by definition, those prevail-

9. We realize that *Three in the Dark*, while made available to the general public over the age of majority, is directed particularly to the male homosexual community. Consequently, our review of the publication is premised on its prurient appeal primarily to this specific group (as well as to the adult community at large). *See Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed. 2d 56 (1966).

ing at the time of the arrest and are not ascertainable until that moment or thereafter. None of these claims is novel, and they may be dealt with briefly.

 Section 22–2001(a)(2)(B) of the Code states as follows:

For purposes of paragraph (1) of this subsection, the term "knowingly" means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of, the character and content of any article, thing, device, performance, or representation described in paragraph (1) of this subsection which is reasonably susceptible of examination.

Appellants do not identify precisely where the vagueness lies. It is not statutorily necessary that appellants knew that the material was obscene, and such knowledge is not constitutionally required. *See Hamling v. United States, supra,* 418 U.S. at 123, 94 S.Ct. 2887. If appellants had knowledge of the character and the contents of the material distributed, both the statute and the Constitution are satisfied.[10] *See Hamling v. United States, supra,* at 123, 94 S.Ct. 2887; *Morris v. United States, supra,* at 339–40.

 Awareness of the contents and nature of the material need not be proven by direct evidence. Circumstantial evidence has been, and remains, satisfactory, providing that its quality and quantity are sufficient to meet the government's burden of proving scienter beyond a reasonable doubt. *See Smith v. California,* 361 U.S. 147, 154, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); *Kramer v. United States,* D.C.

App., 293 A.2d 272, 274 (1972); *Kaplan v. United States, supra,* at 479; *Morris v. United States, supra,* at 340.

 As to appellants' claim that no one could be on notice of contemporary standards because of their necessarily fluctuating and ephemeral footing, neither the statute nor the Constitution requires this kind of notice. It is sufficient that a defendant be on notice of the character and contents of the material. To compel the government to show their actual knowledge of the legal status of the materials "would permit [appellants] to avoid prosecution by simply claiming that [they] had not brushed up on the law." *Hamling v. United States, supra,* 418 U.S. at 123, 94 S.Ct. at 2911. The Constitution does not mandate proof of such knowledge, and neither the wording nor the intent of § 22–2001 could justify such a holding. *See Rosen v. United States,* 161 U.S. 29, 41–42, 16 S.Ct. 434, 40 L.Ed. 606 (1896).

 Appellants' attack on the scienter requirement also may be read as a challenge to the sufficiency of the evidence directed to that element. We conclude that the trial court's finding of Lakin's knowledge is amply supported by the record. Lakin sold the magazine to the officer. Necessarily, he had to look at the publication to ascertain its price. The price ($5.00) is exhibited on the front cover, which is dominated by a six-inch-by-eight-inch photograph of three full-length nude males, two of who are having their genitals fondled by the third. The back cover is similarly emblazoned with a photograph of the three men, each of whom is engaged in the manual genital stimulation of another. Lakin

---

10. The Supreme Court in *Hamling* affirmed that the Constitution compels proof of two elements with regard to scienter, *i. e.,* (1) "that a defendant had knowledge of the contents of the material" and (2) "that he knew the character and nature of the materials." 418 U.S. at 123, 94 S.Ct. at 2910. The Court found that this two-pronged scienter test has been present in the case law at least since 1896, and is implicit in and required by the federal obscenity statutes. Similarly, we read and construe "knowingly" as defined in § 22–2001(a)(2)(B) to comprise knowledge of both the contents and the nature or character of the matter at issue. We think such a construction is apparent from the wording of the statute, which itself speaks to an acquaintance with the "character and contents" of that which underlies the arrest.

also was present four days after the sale, when the arrests and search were made. On the basis of this evidence, the trial court properly could find that Lakin had the requisite knowledge of the character and contents of *Three in the Dark* to support the conviction.

 The evidence of Plummer's scienter also is adequate. He was present in the store, and admitted he was the manager, at the time of the arrests and search. The officer testified that he had seen Plummer in the vicinity of the store's cash register on at least six prior occasions. Moreover, Plummer's name appeared as agent and manager on a 1970 application by the corporate owner of the bookstore for an occupancy permit (for different premises) to serve as the corporation's headquarters. Finally, the search uncovered a device used to encase the various publications in cellophane, along with empty wrappings of the type covering magazines then on the racks, including *Three in the Dark*. We have held previously that the scienter requirement of the statute may be satisfied by a showing that the person charged has "such knowledge of the material that he should have suspected its sale might violate the law and inspected or inquired further as to its character or content." *Kramer v. United States, supra,* at 274. *See also Kaplan v. United States, supra,* at 479; *Morris v. United States, supra,* at 339–40. Plummer was present in the store as manager on at least one day when *Three in the Dark* was offered for sale, with its cover depicting patent obscenity in plain view. The copies of the

magazine apparently had been encased in cellophane covers on the premises. From these facts, the trial court permissibly could infer that Plummer was on general notice of the character of the publication and should have inquired further as to its contents.[11]

*Affirmed.*

11. We do not rule, however, that Plummer, as the manager of the bookstore, had the burden of inspecting the contents of all of the store's merchandise. The Supreme Court has described the dangers of imposing such a burden on bookstore proprietors:

If the contents of bookshops and periodical stands are restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his

absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly. The bookseller's self-censorhip, compelled by the State, would be a censorship affecting the whole public, hardly less virulent for being privately administered. Through it, the distribution of all books, both obscene, and not osbcene, would be impeded. [*Smith v. California, supra,* 361 U.S. at 153–54, 80 S.Ct. at 219.]