James Craig **WALTHALL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 56648.

Court of Criminal Appeals of Texas, Panel No. 3.

Jan. 16, 1980.

Rehearing Denied Feb. 27, 1980.

Malcolm Dade, Dallas, for appellant.

Tim Curry, Dist. Atty., Marvin Collins, Stephen R. Chaney, Joe Shannon and Candyce W. Howell, Asst. Dist. Atty's., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for commercially exhibiting obscene material. Punishment was assessed by the jury at imprisonment for 180 days and a fine of $1,000.

Appellant attacks the constitutionality of the warrant authorizing the search of the Finne Arts Theatre, challenges the admissibility of evidence seized during the search of the theatre and incident to his arrest, and contends that the information is deficient. Appellant further complains that the transcription of the court reporter's notes is incomplete, the trial court's charge was erroneous, and the prosecutor's argument was improper.

On the morning of August 18, 1976, Fort Worth police officer J. V. Carter paid an admission charge of $6.00 and entered the Finne Arts Theatre. He viewed a film which depicted various sex acts, then returned to his office and prepared an affidavit describing the movie scene by scene, in detail. A search warrant was issued on the basis of the affidavit. That evening Carter, Officer Thomas Young, Sgt. E. G. Paulson, Investigator Jim Kuykendall, and Investigator Don Evans went to the theatre to execute the search warrant. Young paid the admission fee with a marked $20 bill and entered the theatre to view the film, while the others maintained surveillance of the theatre.

Appellant arrived and entered the theatre. Young testified that appellant and the theatre's ticket taker walked around the edge of the theatre adjusting and inspecting air conditioning vents. Appellant then left the theatre. Kuykendall testified that upon leaving the theatre appellant went to a pickup parked nearby, retrieved a brown paper sack, and began walking back to the theatre. Kuykendall and Evans approached appellant and displayed their badges, whereupon appellant stepped back and said, "I have a gun, I have a gun." The officers searched appellant, found a handgun, and arrested appellant. A search of the paper sack revealed three reels of sixteen millimeter film, business receipts and records for the theatre, and $870 in cash, including the marked bill that Young had used to pay his admission fee.

The officers then executed the search warrant and searched the theatre. They seized among other things the film which was described in the affidavit, business receipts and records, and several posters which were on the walls of the theatre. All these items were admitted into evidence at trial.

The search warrant in this case authorizes the seizure of:

"1) a motion picture film as described in the affidavit attached hereto and incorporated herein,

"2) all materials kept or prepared for commercial distribution or exhibition which explicitly depict any contact between any part of the genitals of one person and the mouth or anus of another person; any contact between the female sex organ and the male sex organ; any contact between a person's mouth or genitals and the anus or genitals of an animal or fowl; or patently offensive representations of masturbation or excretory functions,

"3) all items of personal property commonly used in the commission of a criminal offense and in particular the offense of commercial exhibition of obscene material,

"4) all implements or instruments used in the commission of a crime."

Appellant contends that the warrant is invalid because the affidavit does not provide the magistrate with probable cause to order the seizure of any items referred to in the second, third, and fourth clauses of the warrant. Appellant also contends that the warrant is a general warrant in contravention of the Fourth Amendment to the Constitution of the United States.

[1, 2] Before an allegedly obscene book, film, or other item within the ambit of the First Amendment may be seized by the police, there must be a judicial determination that the material in question is probably obscene. *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); *Marcus v. Search Warrant*, 367 U.S. 717, 81 S.Ct. 1798, 6 L.Ed.2d 1127 (1961). In the instant case, only the single film viewed by Carter and described in detail by his affidavit had been determined by the magistrate to be probably obscene. While Carter's affidavit was sufficient to justify the issuance of a warrant to search for and seize the particular film described therein, *United States v. Pryba*, 163 U.S.App.D.C. 389, 502 F.2d 391 (D.C. Cir. 1974); *United States v. Sherpix*, 168 U.S.App.D.C. 121, 512 F.2d

1361 (D.C. Cir. 1975), it did not justify the issuance of a warrant for the seizure of any film or other material that had not been subject to prior judicial scrutiny. See *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). There was, therefore, no probable cause to support the second, third, and fourth clauses of the search warrant.

■ In addition to the absence of probable cause, the third and fourth classes of the warrant are unconstitutionally general. The Fourth Amendment to the United States Constitution and Art. I, Sec. 9, of the Texas Constitution prohibit general warrants which fail to particularly describe the property to be seized and allow "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976), quoting from *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Gonzales v. State*, 477 S.W.2d 226 (Tex.Cr.App.1979). As stated by the Court in *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

And see *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

■ The requirements for a sufficiently particular description can vary according to the thing being described. Those things subject to First Amendment concerns, including allegedly obscene publications and films, must be described with greater particularity than other things. *Marcus v. Search Warrant*, supra; *Lo-Ji Sales, Inc. v. New York*, supra. Cf. *Gonzales v. State*, supra.

The third clause of the instant warrant authorizes the seizure of "all items of personal property commonly used in the com-

mission of a criminal offense . . ." The fourth clause authorizes the seizure of "all implements or instruments used in the commission of a crime." Language of greater generality is difficult to imagine. These clauses clearly authorize the general, exploratory rummaging which is properly prohibited by the constitutions of this State and of the United States.

■■ Having concluded that the second, third, and fourth clauses of the search warrant are constitutionally defective, we must address the question of whether this defect renders the warrant invalid as a whole. This appears to be a question of first impression in this State.

In *Aday v. Superior Court of Alameda County*, 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961), the Supreme Court of California held that portions of a search warrant had unlawfully authorized the seizure of privileged material. The court went on to hold that despite this defect the warrant was not invalid as a whole:

> "Although the warrant was defective in the respects noted, it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles. The invalid portions of the warrant are severable from the authorization relating to the named books, which formed the principal basis of the charge of obscenity. The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles." 55 Cal.2d at 789, 13 Cal.Rptr. 420, 362 P.2d at 52.

*United States v. Ketterman*, 276 A.2d 243 (D.C.App.1971), involved a search warrant similar to the warrant in the instant case. The warrant authorized the search for and seizure of a gun and narcotics which were particularly described, but also contained a clause which, in effect, authorized a general search. Citing *Aday v. Superior Court*, supra, with approval, the court held that the description of the gun and narcotics was sufficiently particular to make valid the entry of the police to execute the warrant and that the seizure of the gun and narcotics was lawful.

The rule of severability enunciated in *Aday v. Superior Court*, supra, and followed in *United States v. Ketterman*, supra, has been accepted and followed in most courts which have been faced with the issue, and has been approved by a leading commentator. See *Butler v. State*, 130 Ga.App. 469, 203 S.E.2d 558 (1973); *People v. Mangialino*, 75 Misc.2d 698, 348 N.Y.S.2d 327 (1973); *State v. Johnson*, 160 Conn. 28, 273 A.2d 702 (1970); *State v. Taylor*, 28 Conn.Sup. 19, 246 A.2d 898 (1968); 2 La Fave, Search and Seizure, Sec. 4.6(F) (1978). Contra, *United States v. Burch*, 432 F.Supp. 961 (D.Del. 1977).

We are convinced that *Aday v. Superior Court*, supra, states the proper rule. Accordingly, we hold that while the second, third; and fourth clauses of the search warrant in this case were constitutionally defective, the search for and seizure of the property described in the first clause were not rendered invalid by this defect. In so holding, we adopt the following cautionary language of the California Supreme Court:

> "[W]e do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and the wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated." *Aday v. Superior Court*, supra, 55 Cal.2d at 789, 13 Cal.Rptr. at 420, 362 P.2d at 52.

We also reiterate our dissatisfaction with form search warrants, which the instant warrant appears to be, and point to the facts of this case as an example of why they are undesirable.

■ The following evidence was seized during the search of the Finne Arts Theatre and subsequently admitted in evidence over appellant's objection: the film described in Carter's affidavit and the first clause of the warrant, several posters, and various business receipts and records. Since the seizure of .the film was authorized by the first clause of the warrant, its admission in evidence was not error. But since the posters and business records fall within the scope of the invalid third and fourth clauses of the warrant, and the record does not reflect that their seizure was otherwise authorized by law, their admission in evidence was error. However, we are satisfied that the admission of this evidence was harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Other than to contest the admission of the evidence seized during the search of the theatre, appellant does not challenge the sufficiency of the evidence to support the conviction. In particular, no contention is made that the film viewed by Carter is not obscene. In addition, the trial court admitted in evidence all the items seized from appellant outside the theatre, including three reels of pornographic film, a substantial number of business records and receipts virtually identical to the records and receipts seized in the theatre, and $870 in cash, including the marked bill used by Young. Also admitted were fourteen photographs of the interior and exterior of the theatre, including several which depicted the posters admitted at trial. In light of the clear evidence of appellant's guilt and the admission of evidence substantially identical to that which was improperly seized, and based on "our own reading of the record and on what seems to us to have been the probable impact" of the erroneously admitted evidence "on the minds of an average jury," *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), we find no "reasonable possibility that the improperly admitted evidence contributed to the conviction." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). The State's case would not have been significantly less persuasive had the evidence been excluded. *Schneble v. Florida*, supra.

■ Appellant also contends that the warrant is invalid because no adversary hearing to determine obscenity was held prior to issuance of the warrant. The Supreme Court of the United States has held that there is no constitutional requirement that an adversary hearing to determine the obscenity of materials to be seized be held in advance of the issuance of a search warrant where the materials are seized only for evidence in a criminal trial. *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). See also *Goodwin v. State*, 514 S.W.2d 942 (Tex.Cr.App.1974). Appellant does not complain that the continued exhibition of his film was prevented or that he has no other films to exhibit. Moreover, the search warrant itself gave notice of a scheduled adversary hearing on the obscenity of the items seized to be held five days after the execution of the warrant. Compare *Heller v. New York*, supra; *Goodwin v. State*, supra; *West v. State*, 514 S.W.2d 433 (Tex.Cr.App.1974); *Soto v. State*, 513 S.W.2d 931 (Tex.Cr.App.1974). No error is shown.

■ Appellant complains that there was no "searching inquiry" by the magistrate into the obscenity of the materials seized. It is true that the magistrate did not personally view the film before issuing the warrant, but that is not required. It is sufficient to rely on a detailed description of the entire film sworn to by the viewer, as was done in the instant case. *United States v. Pryba*, supra; *United States v. Sherpix*, supra. Cf. *Bryers v. State*, 480 S.W.2d 712 (Tex.Cr.App.1972), and the cases there cited in footnote 9.

■ Appellant's final contention regarding the validity of the warrant is that the warrant fails to describe the persons to be arrested in sufficient detail. The warrant orders the arrest of "the person or persons commercially exhibiting the said motion picture film or possessing the same with the intent to distribute." It is not

necessary to include the name of the offender in the search warrant. If his name is unknown, it is sufficient to describe him, and if his identity is also unknown, it is sufficient to aver that the premises are in control of "parties unknown to the affiants." See 51 Tex.Jur.2d, Searches and Seizures, Sec. 23, pp. 664–665; *Rice v. State*, 548 S.W.2d 725 (Tex.Cr.App.1977); *Hernandez v. State*, 437 S.W.2d 831 (Tex.Cr.App. 1968). The warrant in this case sufficiently describes the offender, and the description is limited to those persons in control of the film in question. Appellant's contention is without merit.

■ Appellant contends that the trial court erred in admitting the items seized from appellant following his arrest. Kuykendall testified that he saw appellant drive up in a blue Corvette and enter the theatre. Appellant exited the theatre ten minutes later, retrieved the paper sack from the pickup and started back toward the theatre. Kuykendall, who had information that appellant was connected with the theatre, approached appellant in order to identify him. Before Kuykendall reached appellant, appellant stepped back and warned him that he had a gun. Kuykendall then had probable cause to arrest appellant and search him for a weapon, and did so. The items complained of were seized as a result of a search incident to a lawful arrest, and were properly admitted in evidence at trial. *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App. 1978); *Milton v. State*, 549 S.W.2d 190 (Tex. Cr.App.1977); *Crawford v. State*, 544 S.W.2d 163 (Tex.Cr.App.1976).

■ Appellant complains that the misdemeanor information in this case is deficient because it fails to allege the name of the film. This Court held in *Buchanan v. State*, 506 S.W.2d 236 (Tex.Cr.App.1974), that a similar information was not fatally defective. It was stated:

"Appellant would be protected against a second prosecution for the same offense, since a person pleading former acquittal or conviction in this State may allege and prove the facts which show the identity of the offense although this may not ap-

pear upon the face of the indictment or in the recitals in the judgment."

See also *Luna v. State*, 493 S.W.2d 854 (Tex.Cr.App.1973). Also, the record does not reveal that appellant was harmed in any way by the failure to specifically name the film. No error is shown.

Appellant alleges that the trial court erred in failing to insure that a complete statement of facts, including all conferences held outside the presence of the jury, was included in the record. On four occasions, the transcription of the court reporter's notes indicates that an "off-the-record" conference between counsel and the trial court was held. It is not clear from the record whether the trial court directed the reporter not to record these conferences, or whether the reporter was simply unable to hear them.

■ It is the responsibility of counsel to advise the trial court if he desires to have the proceedings or any part thereof reported. Art. 40.09, V.A.C.C.P.; *Taylor v. State*, 489 S.W.2d 890 (Tex.Cr.App.1973). While appellant had requested that the trial proceedings be recorded, it was nevertheless incumbent on him to object if the bench conferences were not held within the hearing of the reporter or recorded by her. Appellant did not object during the trial, nor did he object to the record after being notified of its completion. See Art. 40.09, Sec. 7, V.A.C.C.P. Moreover, appellant has neither shown nor alleged that anything pertinent to this appeal took place in the unrecorded bench conferences. Reversible error is not presented.

■ Appellant complains of the trial court's refusal, over objection, to instruct the jury on the educational, therapeutic, or scientific value, if any, of the film in question. The trial court instructed the jury that in order for them to convict appellant they had to find that the film was "obscene," as the term was defined in V.T.C.A. Penal Code, Sec. 43.21, as it read at the time of the offense and trial. That definition which was included in the court's charge, provided that:

"(1) 'Obscene' means having as a whole a dominant theme that:

"(A) appeals to the prurient interest of the average person applying contemporary community standards;

"(B) depicts or describes sexual conduct in a patently offensive way; and

"(C) lacks serious literary, artistic, political, or scientific value."

Thus the jury could not convict appellant if they found that the film had scientific or educational value. The trial court's charge adequately protected appellant's rights. See *Burns v. State*, 473 S.W.2d 19 (Tex.Cr. App.1971); *McKinnon v. State*, 261 S.W.2d 335 (Tex.Cr.App.1953).

 Appellant contends that the prosecutor interjected unsworn testimony of an inflammatory nature when he argued:

"Now it is not whether it was offensive to Mr. Carter on the day that he saw it, but whether the average person if he had been in that theatre or had seen that film in this courtroom, whether he would find it offensive to what you know the standards of Tarrant County are. Now, I think another way in looking at that would be that if the average person in Tarrant County went to a movie theatre and did not know what was showing—he was just going to a movie theatre, and this movie, the first movie that you saw which is the one that is the subject of this trial, that first movie came on the screen, and he saw that, what would the average person's reaction be here in Tarrant County? Wouldn't he be offended? And wouldn't he say to himself: 'I didn't know they were permitted to go this far in our community.' ? "

Appellant's objection that this argument was outside the record was overruled. The record reveals that the prosecutor was appealing to the jury to correctly apply the definition of "obscene" as set out earlier. His comment constituted a proper plea for law enforcement. See *Phillips v. State*, 511 S.W.2d 22 (Tex.Cr.App.1974).

 Appellant urges that the prosecutor interjected his personal opinion into the case when he argued:

"Remember this, Mr. Dade said that nobody forces anybody to go in these theatres. That's probably true, probably true. Nobody forces anybody to shoot heroin in their arm either, but it's still against the law, you know. So what? If we take his argument to its logical conclusion we can line up on the street corner and watch the junkies squirt heroin in their wrists and arms; same difference."

At trial appellant objected to this argument on the ground that it was contrary to the charge. Objections at trial must comport with grounds of error asserted on appeal. *McIlveen v. State*, 559 S.W.2d 815 (Tex.Cr. App.1977); *Milligan v. State*, 554 S.W.2d 192 (Tex.Cr.App.1977). Moreover, the argument was invited by defense counsel's previous argument that no one is forced to enter the Finne Arts Theatre. *Chappell v. State*, 519 S.W.2d 453 (Tex.Cr.App.1975); *Hill v. State*, 518 S.W.2d 810 (Tex.Cr.App. 1975). No error is shown.

 Appellant contends that in the following exchange the prosecutor was permitted to interject prejudicial unsworn testimony:

"He [appellant] says that he's a delivery boy. Well, first, he is a social worker helping keep the rapists off the streets and now he's a delivery boy. Do you believe that? Do they turn this kind of money over to the delivery boy? No, this kind of money goes in an armored car unless—

"MR. DADE: Your Honor, I think he has now made a statement which is completely outside of the record.

"MR. SHANNON: I withdraw the statement.

"MR. DADE: It's not a reasonable deduction from the evidence.

"THE COURT: You will not take any cognizance of any statement concerning an armored car.

\* \* \* \* \* \*

"MR. SHANNON: I think that it is reasonable to conclude that this kind of money—now notice this kind of money. This ain't a month's worth of receipts

here. Look at this, 8–18 and 8–17. I think you can look at these dates on these bands here and conclude this is two day's business. Eight hundred and seventy dollars is what they said. I think it is reasonable to conclude that they don't turn over this kind of money to the delivery boy. You turn that kind of money over to the head man. They turn it over to the head man. They don't just send a little fellow—

"MR. DADE: I think that that is not a reasonable deduction. I will respectfully object to his position in the argument which he is making. I respectfully move for a mistrial.

"THE COURT: I'll overrule the objection."

The trial court instructed the jury to disregard the statement concerning the armored car. The suggestions that appellant was more than a delivery boy and that he was the head man are reasonable deductions from the evidence. See *Ramirez v. State*, 543 S.W.2d 631 (Tex.Cr.App.1976); *Pecina v. State*, 516 S.W.2d 401 (Tex.Cr.App.1974).

 Appellant contends that the prosecutor engaged in speculation when he argued:

"I think you ought to notice that those folks put only their initials on here. That's interesting; isn't it? Don't put their names; why don't they put their names? Don't they want anybody to know their names? If they thought this was a perfectly legal business, what would be wrong with putting their names on there?"

This argument appears to be a reasonable deduction from the evidence, but in any event a jury argument must either be extreme or manifestly improper, or inject new and harmful facts, to be reversible. *Thomas v. State*, 519 S.W.2d 430 (Tex.Cr.App. 1975); *Minter v. State*, 505 S.W.2d 581 (Tex.Cr.App.1974). Such is not the case here.

Finally, appellant contends that the following argument by the prosecutor contained exaggerated conjecture unsupported by the evidence:

"And you folks remember this, if you want this kind of material shown in Fort Worth, Tarrant County, Texas, then all you have to do is to turn James Walthall loose, and I can assure you that when this jury comes back in with a not guilty that there is nothing to stop him or anybody else that wants to show these things down on any street corner to anybody that is big enough to walk up and buy a ticket from doing so."

The comment was a proper plea for law enforcement. See *McCall v. State*, 540 S.W.2d 717 (Tex.Cr.App.1976); *Phillips v. State*, supra; *Bowman v. State*, 446 S.W.2d 320 (Tex.Cr.App.1969).

The judgment is affirmed.