Jeff EMERY, Appellant,

v.

The STATE of Texas, Appellee.

No. 69650.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 14, 1990.

Rehearing Denied Dec. 19, 1990.

Dennis W. McGill, Lubbock, Keith D. Swim, Jr., Bryan, for appellant.

Bill Turner, Dist. Atty., Deena J. McConnell, Asst. Dist. Atty., Bryan, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

Appellant was convicted of capital murder, V.T.C.A. Penal Code, § 19.03(a)(2), and sentenced to death, Article 37.071, V.A.C.C.P. In his first point of error, appellant contends that he is entitled to a new trial because the record on appeal does not and cannot contain a complete transcription of the proceedings in this case. Because appellant's request for a statement of facts was timely, and the loss of the court reporter's notes and records were not appellant's fault, we must reverse.

1. Notice of appeal was formerly required within ten days after the overruling of motion for new trial in capital cases. See Article 44.08 V.A.C.C.P. However, under the Rules of Appellate Procedure, such notice is unnecessary where the death penalty has been assessed. See Tex.R.App.Pro. Rule 40(b).

2. It was this extension of time which brings this case under the purview of the Texas Rules of Appellate Procedure, which took effect on September 1, 1986. On September 22, 1986, this Court issued an order "that as to posttrial, appellate and review procedures and steps completed or required to have been completed prior to September 1, 1986, the procedural provisions then in effect shall govern." The Court also ordered that appellate procedures and steps "completed or required to have been completed on or after September 1, 1986, shall be governed by the procedural requirements of the Texas Rules of Appellate Procedure in criminal cases, regardless of when notice of appeal was given." Because the extension of time required the transcription to be filed after September 1, 1986, this appellate step, and all subsequent steps, are regulated by the Texas Rules of Appellate Procedure.

Appellant was sentenced May 23, 1986. On June 20, 1986, appellant filed a motion for new trial which was denied on July 7, 1986. On July 16, 1986 appellant filed, along with his notice of appeal,[1] a written designation specifying all matters to be included in the record on appeal, including the complete transcription of all pretrial hearings, pursuant to Article 40.09 § 2, V.A.C.C.P. [now Tex.R.App.Pro., Rules 53(a) and 54(b)].

Appellant made a motion for extension of time to file the transcription of the court reporter's notes; this Court granted the motion, and extended the time for filing, first to October 18, 1986,[2] then to December 15, 1986, and again to February 2, 1987. On January 7, 1987, the court reporter wrote defense counsel and informed them that her pretrial stenographer's notes had been stolen from her storage unit. In her affidavit included in the transcript, she swears that she took notes of pretrial proceedings, but these were taken in a burglary and that the investigating police department has closed the case. These notes included four pretrial hearings occurring on the following dates: (1) September 4, 1984; (2) March 7, 1986; (3) March 24, 1986; and apparently (4) June 5, 1984.[3]

This case is distinguishable from *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App., 1989) in which appellant's sentence (on July 29, 1984), his objection to the record (filed two years later) and the subsequent hearing all occurred before the effective date of the Texas Rules of Appellate Procedure.

3. While the court reporter whose notes were stolen was the same one present at the June 5, 1984 proceeding, it is possible that another court reporter was present that day. The defense attorney testified, explaining how he discovered this possibility:

"There was one other pretrial hearing that was [apparently] lost by Vicki Unterberger. The way that I determined this was to go and talk to the District Clerk's Office and ask them who was the Court Reporter who took the notes [on June 5, 1984]. I was told that they didn't keep that, that it was kept in a book that was kept in the Coordinator's Office. I went to the Coordinator's Office to find out who had the book. The book had been lost. I went to Janet Hadley, Judge W.T. McDonald, Jr.'s secretary, and asked her if she knew where the book was. She said she didn't know where the book was. I asked her

This Court granted a final extension of time to file a transcription of the court reporter's notes, setting a deadline of June 3, 1987.

█ On May 29, 1987, the trial judge filed a "Substituted Transcript" so that the record would "speak the truth."[4] In the substituted transcript, the court found that the court's docket notations for September 4, 1984, and March 7, 1986, "reflect the entire events which transpired on that day; and that no factual or testimonial evidence was presented." The rest of the transcript was devoted to listing the disposition of various motions heard on March 24, 1986. However, nowhere is there a substitution regarding the June 5, 1984 pretrial hearing.

On June 3, 1987, the district clerk notified appellant's counsel that the record on appeal had been completed. Appellant filed an Objection to the Transcript in the trial court on June 10, 1987, and in this Court on June 11, 1987.

On June 19, 1987, a hearing was held on the State's Motion to Substitute the Record. The State called the defense attorneys, Mr. Swim and Mr. McGill, in an attempt to elicit from them, among other things, the substance of the June 5th pretrial hearing. Mr. Swim testified that he was not present at the June 5, 1984 hearing because he had not become an attorney on the case until sometime in 1986. Mr. McGill was able to recall only that there "were numerous status hearings, both formal and informal, held in open court and in chambers with the Court on various occasions concerning the status of the case in Wisconsin and the status of the case in Brazos County."[5] He was unable to recall

---

to look for the book. She said she would, that she would try to call the former Court Coordinator, who is no longer employed by Brazos County, and find out where it was left. After some weeks passed, the book had still not turned up. And therefore I went back to the Clerk's Office and asked them if they had any idea who might have taken that transcript down that day.

＊ ＊ ＊ ＊ ＊ ＊

... I [also] went to the Auditor's Office and asked them if they had any records to that effect. They said they do not have them in their office, that they have to go down to the Barn on 25th Street where all the old records of Brazos County are kept. After going through about ten to twelve legal file boxes that have been put by myself along with Rhonda Seaton, one of the Assistant County Auditors, we found the file that was supposed to contain who was (sic) the Court Reporters during the month of June of 1984 in Brazos County; however, that file was empty."

Defense counsel investigated the matter further, but no one had any records, either in the clerk's office or the auditor's office, which conclusively reflected the name of the court reporter at the June 5, 1984 proceeding.

4. The trial court may have filed this "substituted transcript" pursuant to Rule 55(b) which governs "anything material to either party [which is] *omitted* from the transcript or statement of facts." (emphasis added). This Rule gives the trial court authority to *sua sponte* "direct a *supplemental* record" after notice and a hearing. (emphasis added). This section is inapplicable to the present facts because one cannot "supply" that which has been lost or destroyed.

The trial judge may have been uncertain about which Rule governed the hearing, subse-

quently held on June 19, 1987, on the State's Motion to Substitute the Record. While he filed what he called a "Supplemental Transcript pursuant to Rule 55(b) of the Texas Code of Criminal Procedure," he titled the document "Substituted Transcript." The prosecutor argued that "what we're doing here is pursuant to [Rule] 55(b)." The defense nevertheless requested a "clarification as to the title of the document ... Is it really to be a Supplemental Transcript or a Substituted Transcript?"

"MR. KENNADY [Prosecution]: Your Honor, it's in the nature of a substituted transcript. What the nature of this hearing is for is really we're proceeding under both Rule 55(b) where it speaks to Supplemental Transcript and also, Your Honor, under Rule 50(e), which has to do with a lost or destroyed record. So I think we have to read those two Statutes in conjunction with each other and the first sentence under Rule 50(e), Your Honor, is when the record or any portion is lost or destroyed, it may be substituted in the Trial Court.

THE COURT: Why don't we call it a Substituted/Supplemental.

MR. KENNADY: Okay. That way it covers it under both Statutes."

We treat the document and hearing as an attempt to substitute the stolen records with an agreed statement of facts, pursuant to Tex.R. App.Pro. Rule 50(e).

5. These hearings concerned a subject of another point of error on appeal, namely, whether appellant's wife, the State's key witness, would be permitted to testify under V.A.C.C.P. Article 38.-11 (repealed by Texas Rules of Criminal Evidence, Rules 504, 505) in effect at the time of trial. Appellant's wife had divorced him in Wis-

whether any testimonial evidence was presented. Before the hearing was adjourned, the trial judge read a number of notes he had made "hopefully to help the Appellate Court," none of which referred to the June 5th hearing. Thus, as to that hearing, we have neither a statement of facts nor a substituted transcript.[6]

Prior to the advent of the Rules of Appellate Procedure, it had "long been the rule in this State that '[w]hen an appellant, through no fault of his own or his counsel's, is deprived of a part of the statement of facts which he diligently requested, the appellate court cannot affirm the conviction. [citations omitted].'" *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989), quoting *Dunn v. State*, 733 S.W.2d 212, 214 (Tex.Cr.App.1987). Before the Texas Rules of Appellate Procedure took effect on September 1, 1986, "once an appellant demonstrate[d] that he requested the court reporter to take notes of the trial or any part thereof, that the court reporter was requested to transcribe the notes and include such transcription in the record on appeal and the court reporter's failure to do so was appropriately objected to, then a conviction must be reversed." *Harris*, supra. See also *Timmons v. State*, 586 S.W.2d 509, 512 (Tex.Cr.App.1979).

Currently, "Rules 50 through 55 shall govern preparation and filing of the record on appeal of a case in which the death penalty has been assessed." Tex.R.App. Pro. Rule 210(a). The law governing lost records is now codified in Tex.R.App.Pro. Rule 50(e). Rule 50(e), supra, provides that

"[w]hen the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the appellate court as in other cases. If the appellant has made a timely request for a statement of facts, but the court reporter's notes and records have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial unless the parties agree on a statement of facts."[7]

Under Rule 50(e), an appellant must demonstrate that he made a "timely request." A request for the statement of facts on appeal must be a "written request to the official reporter designating the portion of the evidence and other proceedings to be included therein." Tex.R.App.Pro. Rule 53(a). A request for the transcript on appeal must be a "written designation specifying matter for inclusion in the transcript." Tex.R.App.Pro. Rule 51(b). Re-

consin, but on appeal the judgment of divorce was vacated and the case reversed. Thus, the admissibility of the wife's testimony is a critical issue in this case, an issue we cannot adequately review without a complete record on this point.

6. We note that the transcript contains a typed docket entry for June 5, 1984 which reads: "Mr. McGill, Mr. Barron, Mr. Turner appear. Mr. McGill anticipates decision by late August." However, appellant objected to the use of this docket entry as a substitution for the stolen transcription of the June 5, 1984 pretrial hearing, partially on the grounds that a docket entry was a poor reflection of what transpired at a hearing. The defense counsel stated "that we feel the transcript is the better choice of evidence due to the fact that memories can fade. There may have been some things that were not written down on the docket sheet that actually occurred at that hearing." Defense counsel also objected on the grounds that the docket entry was itself an edited version of the original, more complete handwritten docket sheet.

The trial judge replied that his "docket sheet is a mere memorandum, a shorthand memorandum for the Court. It's not supposed to tell

everything that went on. That's why you have Official Court Reporters. And also I don't know where the handwritten is; and if anybody can read my handwriting, put the thing in the record. That's fine. The only reason it's typed is because the Appellate Court would probably send it back and want to have it typed anyway. They wouldn't be able to read it."

The trial judge elaborated that "there are also some times when I make notes on a little ole pad like this (indicating) and then later put it on the docket sheet." Later, the judge remarked, "I'd hate to think a case could be appealed and decided on a docket sheet," to which the defense attorney replied, "And therein lies my objection, Judge...."

7. Perhaps the most noticeable change in the law regarding lost or destroyed appellate records is the error which costs appellant his complaint on grounds of lost or destroyed records. Previously, it was appellant's *failure to timely file the record* which was fatal to a complaint on this ground; presently under Rule 50(e), it is appellant's fault in the *loss or destruction of the record* which will preclude any complaint on this ground.

quests for either the statement of facts or transcript must also be "timely," i.e., made to the reporter "within sixty days after the day sentence is imposed." Tex.R.App.Pro. Rule 54(b). If a timely motion for new trial is filed, then "the transcript and statement of facts shall be filed within one hundred days after the day sentence is imposed...." *Id.*

■ The State does not expressly dispute that a portion of the record has been effectively lost or destroyed. Instead, the State argues that appellant "has failed to preserve any alleged error." "Appellant," the State argues, "nowhere cites to any request by appellant to record these hearings." The State may be making one of two arguments. The State may be claiming that the absence of a request to record a proceeding in the record raises an inference or presumption that no such recording was ever made. Alternatively, the State may be arguing that appellant's failure to request a reporter constitutes a waiver of the right to have designated transcriptions included in the record on appeal.

Citing Article 40.09, §§ 4 and 5, V.A.C. C.P., the State appears to invite this Court to infer the nonexistence of any recording from the absence of a request for a reporter in the appellate record. However, the very statutory provisions the State cites reveal that such an inference or presumption cannot be made because proceedings *may well be recorded without a defendant* having to make any such formal request. Article 40.09 § 4 reads in pertinent part *"[a]t the request of either party* the court reporter shall take short-hand notes of all trial proceedings...." (emphasis added) Article 40.09 § 5, supra, says that a "party desiring to have included in the record a transcription of notes of the reporter shall have the responsibility of obtaining such transcription and furnishing same to the clerk in duplicate in time for inclusion in the record ... The court reporter shall report any portion of the proceedings *requested by either party or directed by the*

*court."* [8] (emphasis added) If either the State requests or the trial court directs a recording of the proceedings, there is no need for the defendant to subsequently present a written request for a court reporter who is already present and taking notes. The absence of a request in the record could just as well support the inference that someone other than the defendant prompted a proceeding to be recorded. In fact, it may well have been that the trial court itself directed that these proceedings be recorded, as this Court has repeatedly urged trial courts to do. See, e.g., *Brown v. State*, 505 S.W.2d 277, 279 (Tex.Cr.App. 1974) ("[W]e strongly advise the trial judges, even in the absence of a request, to have the court reporter record all of the proceedings unless this is expressly waived.") and *Presley v. State*, 538 S.W.2d 624, 626 (Tex.Cr.App.1976). Thus, it may have been that while no one requested a reporter, the trial judge directed a recording, pursuant either to this Court's admonitions or pursuant to Article 40.09 § 5. In any case, we decline any invitation to make an inference or create an appellate presumption that an absence of a request for a court reporter to record proceedings means no recording was ever made.

■ Even if such an inference were to be made, it is more than rebutted by a review of the record as a whole. The transcript on appeal reflects that the court reporter swore that such notes were taken at the missing hearings; that the State attempted to certify findings made at the June 19 hearing as a substitute for the hearings; that the trial judge filed a transcript himself as a substitute for the notes; and appellant complained that the notes were irretrievably lost or destroyed. We think these facts are enough to raise a more persuasive, countervailing inference that a record of the proceedings was in fact made.

■ The State may also be arguing that while a record was made, appellant waived his right to complain about its absence on

---

**8.** The diligence of the defense attorneys to obtain the transcription of these hearings cannot be seriously contended in light of the court

reporter's affidavit that the notes were stolen and that the police have closed the investigation.

appeal because he failed to request a court reporter. At the outset, we observe generally that there are four possibilities regarding requests and records. The first potentiality is that no request is made and no record is made; as the case cited by the State makes clear, an appellant under such circumstances effectively waives his complaint on this ground. See *Brown*, supra. Secondly, a request may be made and a record completed; however, we cannot conceive how such a fact alone would ever be a ground for a complaint on appeal. A third scenario is that appellant files a request, yet no record is made; again, the cases cited by the State govern the disposition of such a circumstance on appeal. See *Wells* and *Schneider*, infra. Finally, an appellant may make no request for a court reporter, yet such a record is made; this appears to be the situation in the instant case.

The State's argument confuses the first scenario where no record is made and appellant made no request, and the situation where a record is made, but not necessarily at appellant's behest. The former constitutes a waiver of the right to have a record made; the latter has nothing to do with waiver of the right to have a record made. If appellant never requests that a court reporter record hearings, and no record is made, he cannot complain of such fact on appeal. However, where a court reporter does record a proceeding, regardless of who prompted the transcription, appellant is entitled to have such included on appeal, as long as he files a timely designation of record on appeal.

Every case cited by the State involves situations where no record was ever made. In *Brown*, supra, no reporter was present to record defendant's hearing on his plea of guilty because he failed to request that a court reporter make such a transcription. In both *Wells v. State* 578 S.W.2d 118 (Tex.Cr.App.1979) (a DWI conviction) and *Schneider v. State*, 645 S.W.2d 463 (Tex. Cr.App.1983) (aggravated robbery convictions), each defendant did file a written request that a court reporter transcribe the voir dire, but the voir dire was not recorded. This Court held that the failure to record these proceedings did not constitute

error because the motion was never called to the attention of the trial judge. Finally, in *Walthall v. State*, 594 S.W.2d 74 (Tex. Cr.App.1980) (conviction for commercially exhibiting obscene material), the appellate record reflected that conferences between counsel and trial court were held at various points during trial, but these conferences themselves were not recorded. Because it was unclear whether the court reporter was unable to hear the bench conferences, or whether the trial court directed the reporter not to make a transcription of the conferences, this Court decided that it was "incumbent on [counsel] to object if the bench conferences were not held within the hearing of the reporter or recorded by her." *Walthall*, supra at 81. The common event in each of the cases cited by the State is that a court reporter failed to make a transcription of some proceeding. It is this event in these cases which distinguishes the present case, in which a transcription was indeed made, but lost.

■ Even if the issue whether a reporter was ever requested, and by whom, were dispositive in this case, the State waived any complaints on these points at the June 19, 1987 hearing held on the State's Motion to Substitute the Record. At this hearing, the prosecution never disputed whether these hearings were recorded; rather the State attempted to demonstrate that the trial court's docket sheets were a sufficient substitution for the hearings and/or that the hearings were inconsequential. The trial judge told the prosecution, "Y'all put everything you want in here, and I'm going to certify it to the Court of Criminal Appeals and they are the ones that decide whether there is a sufficient record or not. And that's the controverted issue you all can't agree on, so put on your evidence." Nothing in the State's evidence vaguely suggests that these hearings were not recorded. Our review of the hearing on the State's Motion to Substitute the Record reveals that the existence of a record of pretrial hearings was never an issue among any of the participants, including the trial judge and the prosecutor. Indeed, the prosecution's thorough inquiries regarding

defense counsel's diligence in retrieving the stolen notes suggest that the State itself presumed such notes existed. Furthermore, appellant included in the record an affidavit from the court reporter which shows that notes for pretrial hearings had been stolen. From the record, then, it is clear that these pretrial hearings were in fact recorded by a court reporter. Thus, the State waived its waiver argument by failing to dispute in any way, at the hearing held on its own motion, that a court reporter was ever requested to record pretrial hearings.

■ The record as a whole reflects that a court reporter was requested to take notes of pretrial hearings. Within the time allowed following the motion for new trial, appellant requested these notes be included in the record on appeal. Through no fault of his own, the notes were effectively lost or destroyed. Because appellant's right to have designated portions of trial record included in the appellate record can be remedied no other way, a new trial is required.[9]

The judgment is therefore reversed and the cause is remanded to the trial court.

McCORMICK, P.J., and W.C. DAVIS, J., concur in the result.

WHITE, J., dissents.

BERCHELMANN and STURNS, JJ., not participating.

---

**9.** Rule 50(e) also contemplates that the parties may agree on statement of facts which have been lost or destroyed. No agreement was reached in this case. The prosecution did appear to offer the trial court's edited, second-hand docket entries as a substitute for the substance of the pretrial hearings. However, the defense counsel declined both because no one could recall any details about the June 5, 1984 pretrial hearing, and because the offered docket sheets were edited versions of the originals.