Kenneth Edwin KING, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–92–201–CR.

Court of Appeals of Texas,
Waco.

June 23, 1993.

Thomas D. Whitworth, Law Offices of Thomas D. Whitworth, Cleburne, for appellant.

Dale S. Hanna, Dist. Atty., Cleburne, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Kenneth Edwin King was convicted by a jury of possession of marihuana, less than five pounds but more than four ounces. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.120(b)(4) (Vernon 1992). His conviction was enhanced by two prior felony convictions, and he was sentenced to twelve years in prison. He appeals on three points. We will affirm.

In the early morning hours of December 14, 1990, King lost control of his vehicle and turned it over in Barry Gee's front yard. King was unhurt, and Gee gave him a ride home. Approximately four hours later, Trooper James LeBlanc, an officer with the Department of Public Safety (DPS), went to the accident scene. He found cigarette rolling papers and what appeared to be a single leaf of marihuana. On information from a neighbor, LeBlanc then went to King's home. When King opened the door, LeBlanc recognized the distinct odor of marihuana. King told Le-Blanc that there were marihuana cigarette butts inside the house. King returned to the scene of the accident with LeBlanc. King told LeBlanc that he had recently smoked marihuana. When asked by Le-Blanc if he had any additional quantities of marihuana, King responded that he had small quantities at his home. In checking King's criminal history, LeBlanc determined that King had nine prior arrests and two convictions, including one for the sale of drugs. Based on this information, a warrant was procured to search King's home. The search revealed eight growing marihuana plants, seventy smoked marihuana cigarette butts, and small quantities of loose marihuana.

In his first point, King asserts that the court erred in admitting the marihuana found in his home because the search warrant was overly broad in describing the evidence to be seized. The affidavit filed by the requesting officer, Bob Alford, stated that the affiant had reason to believe King was in possession of a usable amount of marihuana and "narcotics paraphernalia ... audio or visual recordings, ledgers, notes, computers, log books, or other items which would show the illicit distribution of controlled substances and marihuana. U.S. Currency utilized in or derived from the illicit trafficking of controlled substances."

A search warrant may not issue unless it is based on probable cause. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Hughes v. State*, 843 S.W.2d 591, 593 (Tex. Crim.App.1992). Under both the Fourth Amendment of the United States Constitution and Section 9 of Article I of the Texas Constitution, an affidavit is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983); *Bower v. State*, 769 S.W.2d 887, 902 (Tex.Crim.App.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). Probable cause sufficient to support a search warrants exists if the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the object of the search is probably on the premises at the time of issuance. *Cassias v. State*, 719 S.W.2d 585, 587–88 (Tex.Crim.App.1986) (on rehearing). In determining whether a search warrant is based on probable cause, the affidavit is interpreted in a common-sense, realistic manner; hypertechnical analysis should be avoided. *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992). The magistrate's determination of probable cause is given great deference by the reviewing court. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331.

Although King agrees that probable cause existed for the issuance of a search warrant for marihuana, he argues that the officers had no reason to believe he was involved in the "illicit distribution of controlled substances." Thus, he says, the warrant was overbroad and was in essence a prohibited general warrant, the fruits of which should be suppressed. The State argues that because King's criminal history indicated a 1972 conviction for the sale of dangerous drugs—in addition to LeBlanc's observations and King's statements—probable cause existed to search King's home for drug sales records.

Assuming without deciding that King is correct and that no probable cause existed for the issuance of a search warrant for "narcotics paraphernalia ... audio or visual recordings, ledgers, notes, computers, log books, other items which would show the illicit distribution of controlled substances and marihuana, [or] U.S. Currency utilized in or derived from the illicit trafficking of controlled substances," he has not shown how he was harmed by the inclusion of those items in the search warrant. The only evidence introduced was the marihuana that he admits was the proper subject of the warrant; no item fitting the descriptions about which King objects was seized or introduced against him. We believe that the rule of severability should be applied. *See Walthall v. State*, 594 S.W.2d 74, 79 (Tex.Crim.App. [Panel Op.] 1980). Thus, even if the objectionable portions of the warrant were invalidated, the remaining part—that authorizing the officers to search for marihuana—remains valid.[1] *See id.* We further note that the warrant described only particularized items and did not contain the kind of general language condemned in *Walthall. See id.* We overrule point one.

In point two, King asserts that the court erred in admitting the marihuana because of a discrepancy in the dates on the search warrant affidavit and the search warrant itself. The search warrant was dated December 14, 1990, at 8:45 a.m., by Judge Betty Styles, justice of the peace. The affidavit attached begins on a printed form that was dated December 15 by the judge. The form affidavit incorporates Exhibit A, which is actually a continuation of

---

1. *Walthall* has been followed in *Keen v. State*, 626 S.W.2d 309, 312 (Tex.Crim.App. [Panel Op.] 1981); *State v. Morgan*, 841 S.W.2d 494, 499–500 (Tex.App.—El Paso 1992, no pet.); *Dowler v. State*, 777 S.W.2d 444, 449 (Tex.App.—El Paso 1989, pet. ref'd); *Coberly v. State*, 640 S.W.2d 428, 431 (Tex.App.—Fort Worth 1982) (reversed and remanded on other grounds), *pet. ref'd*, 644 S.W.2d 734 (1983). The rule, characterized as "redaction," was adopted by the Fifth Circuit in *United States v. Christine*, 687 F.2d 749, 759 (1982) ("redaction is an efficacious and constitutionally sound practice").

the affidavit on paper from a yellow legal pad. Exhibit A is dated December 14. The return shows the warrant was executed on December 14.

King cites article 18.01(b) of the Code of Criminal Procedure for the proposition that a sworn affidavit setting forth substantial facts establishing probable cause shall be filed *before* a search warrant is issued. *See* TEX.CODE CRIM.PROC.ANN. art. 18.01(b) (Vernon Supp.1993). Because of the discrepancy in the dates, King asserts that article 18.01(b) has not been followed and therefore the search of his home was invalid. At the suppression hearing, Judge Styles testified that she had made an error in writing December 15 instead of December 14 on one of the acknowledgments. Technical discrepancies in dates or times do not automatically invalidate a search warrant. *Green v. State*, 799 S.W.2d 756, 759 (Tex.Crim.App.1990); *Lyons v. State*, 503 S.W.2d 254, 255–56 (Tex.Crim.App.1973). Given the testimony of Judge Styles, the court could have reasonably concluded that the discrepancy in dates was an inadvertent clerical mistake and did not vitiate the search warrant. We overrule point two.

■ In point three, King asserts that the evidence is insufficient to prove that he possessed more than four ounces of marihuana. Eight exhibits containing marihuana were introduced into evidence by the State, including the leaves taken from eight pots of growing marihuana plants, seventy smoked marihuana cigarette butts, and several baggies containing loose marihuana. Gloria Rodriguez, formally a DPS laboratory technician, testified that she received the eight exhibits on December 20, 1990, and analyzed the substances in January 1991. She testified that the total weight of the marihuana was 4.15 ounces. Jill Dupre, a commercial laboratory technician, testified for the defense. She analyzed the exhibits in January 1992, using the same DPS scales Rodriguez had used, and determined the weight to be 3.93 ounces. The lesser-included offense of possession of marihuana under four ounces was submitted to the jury. The jury returned a verdict convicting King of possession of more than four ounces.

In reviewing the sufficiency of the evidence, we look at the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness' testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984).

Both lab technicians testified that there is no precise scientific determination of what part of the marihuana should be discarded before weighing. Rather, it is a matter of each technician's personal technique. Dupre's results showed three of the eight exhibits weighed more than Rodriguez's results. King argues that the eight pots of marihuana were left under a grow light in the police property room for three days before the plants were stripped of their leaves and weighed. The record reveals that the plants were left in the property room to dry out because the lab would not take growing marihuana. There is no indication the plants were under a grow lamp.

Rodriguez testified that when she received the green marihuana, she allowed it to air dry before determining the weight for trial. She testified that, in the ten days she had the marihuana before she analyzed it, it had lost fifty-three percent of its weight due primarily to water loss. She testified that the marihuana, if retested and reweighed over a year later, would probably have lost more weight due to water loss. Rodriguez stated that she was "meticulous" about removing stems before weighing the marihuana. She further testified that, in conducting her analysis, she had used and discarded .13 ounces of the marihuana.

We find that any rational trier of fact could have found the essential elements of

the offense of possession of marihuana less than four pounds but over four ounces beyond a reasonable doubt. *See Matson,* 819 S.W.2d at 843. We overrule point three.

We affirm the judgment.